IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| VICTOR LAMONT HARRIS, #141 938 | * |
| Plaintiff, | * |
| v. | *   2:04-CV-485-MHT |
| | (WO) |
| OFFICER JOSEPH WHITEHEAD, *et al.*, | * |
| Defendants. | * |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Victor Harris ["Harris"], an Alabama prisoner incarcerated at the Easterling Correctional Facility, filed this *pro se* 42 U.S.C. § 1983 action alleging that defendants violated his constitutional rights by subjecting him to excessive force[1] and false disciplinary action.[2] Harris seeks injunctive relief and monetary damages against Joseph Whitehead ["Whitehead"], Shannon Spann ["Spann"], and Jason Baxley ["Baxley"].

In accordance with the orders of the court, defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Harris that defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Harris the proper manner in

---

[1] Although Harris refers to an "assault and battery," the court understands his complaint to allege a claim that he was subjected to excessive force in violation of the Eighth Amendment.

[2] In his complaint, Harris asserts a claim of "negligence against the State." (Doc. No. 1 at pg. 3.) On July 23, 2004 the court dismissed Harris' complaint against Defendant State of Alabama which is barred from suit regardless of the nature of relief sought. *Pennhurst State School & Hosp. V. Halderman*, 465 U.S. 89 (1984).

which to respond to a motion for summary judgment. Harris filed a response to the special report filed by Defendants.

This case is now pending on defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Harris' opposition to this motion, the court concludes that defendants' motion for summary judgment is due to be granted in part and denied in part.

## I. BACKGROUND

Harris alleges that on January 23, 2004 Officers Whitehead, Spann, and Baxley beat and maced him while he was handcuffed. After being taken to the shift office, Harris claims that he was beaten again while still handcuffed. In addition to being beaten, Harris contends that he was cut on the back of his left arm with a knife. After being treated for injuries, Harris was placed on the segregation unit. (Doc. No. 1.)

The defendants deny violating Harris' constitutional rights. On the day in question, Whitehead was assigned as a rover for Dorm 6A. As he was performing his assigned duties, he observed Harris being loud and disruptive in the dorm. He ordered Harris to be quiet so the other inmates could sleep. Harris told the guard to get away from his bed and persisted in talking. Whitehead ordered Harris to report to the lobby. Harris refused to comply with the order, prompting Whitehead to grab him by the arm to escort him out of the

dorm. Harris then lunged at Whitehead and grabbed him around the waist as he attempted to pick the officer up and grab his baton. Whitehead managed to get his cannister of Freeze+P and, after yelling "Gas!," sprayed one burst at Harris. Spann, who had been on the other side of the wall, heard the commotion and attempted to aid Whitehead. He helped separate Harris from Whitehead.

The two officers subdued Harris by placing him on the floor and handcuffing him from behind. Spann and Whitehead then escorted Harris to the shift commander's office and ordered him to sit on the floor against a wall while Officers Spann and Whitehead decontaminated themselves from the chemical spray. Baxley entered the office, followed by Sergeant Baker. After Whitehead and Spann informed Sgt. Baker about the details of the incident with Harris, Baxely escorted Harris to the infirmary for examination and decontamination. All of the defendants deny beating or cutting Harris and state that all use of force ceased after Harris was handcuffed and under control. (Doc. No. 13, Affidavits of Baxley, Spann, and Whitehead.)

Harris's medical examination revealed reddened wrists due to the handcuffs along with abrasions on his stomach, on the back of his right arm, and on the right side of his nose. A scant amount of blood was found on the side of Harris' nose. Medical personnel found no bleeding to the other abraided areas. Harris' abrasions were cleansed, and his eyes were flushed for approximately ten minutes or more. Medical personnel advised Harris to return

to sick call if necessary. (Doc. No. 13, Medical Record.)

## II.  STANDARD OF REVIEW

In order to survive the defendants' properly supported motion for summary judgment, Harris is required to produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal

interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. DISCUSSION

*A.*   *Individual Capacity Claims*[3]

    **1.**   **Excessive Force**

Defendants argues that they are entitled to qualified immunity on Harris' excessive force claim. The law of this circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).

A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force. *Id.* Harris has properly pled a claim of excessive force.

---

[3] A review of the complaint reflects that Plaintiff seeks to sue Defendants in their individual capacity only. (Doc. No. 1 at pg. 1.) The court notes that "a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider whether Harris's allegation that the defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious

injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327.) In *Hudson*, the Court did not define "*de minimis* use of force" but suggested that the degree of injury received is at least relevant to determining whether more than *de minimis* force was used. *Id.* at 10.

Harris's allegations are set forth in the Background section of this Recommendation, supra, and are documented in Document No. 17 and in his affidavit. It is questionable whether Harris suffered anything more than minor injuries as a result of Whitehead's and Spann's alleged conduct, but the injuries he received are only one factor for consideration. While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry. *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).

The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response. *Skrtich*, 280 F.3d at 1305 n.9. In the instant case, Harris assets that Whitehead instigated a use of physical force against him for no apparent reason and while he posed no threat, and that he and Spann continued to utilize physical force against him for no reason. (Doc. No. 17 & Harris Affidavit.)

Whitehead and Spann, however, deny that they used excessive force to subdue Harris and maintain that the only physical contact made with Harris consisted of taking him to the floor and placing him in handcuffs in order to subdue him and bring him under control. (Doc. No. 13, Whitehead and Spann Affidivats.)

When viewing the facts in the light most favorable to Harris, this court concludes that defendants are not entitled to qualified immunity as Harris alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment on the claim of excessive force should be denied.

**2.     False Disciplinary Charge**

Following the incident with defendants, Harris was processed into the administrative segregation unit pending disciplinary action for violations of Rule #29, assault on a DOC official, and Rule #56, failure to obey a direct order of a DOC official, which are more severe

8

violations than a violation for disorderly conduct. (Doc. No. 13, Whitehead, Spann, and Baxley Affidavits.) Harris argues that the basis for these rule violations stemmed from false accusations made by Defendants in order to justify their use of force against him.[4] According to the evidentiary material before the court, however, the disciplinary charge against Harris arose from his conduct and actions on the morning of 23 January 2004 and the gravity of his conduct and actions. Thus, the defendants deny that the information in the disciplinary report is false.

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is

---

[4]The evidentiary material before the court contains only a copy of the disciplinary report which charged Harris with violating Rule #29. To the extent Harris contends that he was never actually charged with a violation of Rule #56, then his contention that he was falsely charged with such infraction is devoid of merit. (*See* Doc. No. 17 at pgs. 4-5.) The evidence before the court indicates that violations of Rule #29 and Rule #56 are more severe than a violation for disorderly conduct and that Harris was processed into administrative segregation *pending* disciplinary action for violations of Rule #29 and #56. On February 5, 2004 a hearing was held on the charges against Harris for violating Rule #29. He was found guilty of the charge and sentenced to 40 days disciplinary segregation. (Doc. No. 13, Whitehead, Spann, and Baxley Affidavits, January 23, 2004 Incident Report, and Disciplinary Report.)

To the extent Harris maintains that he was denied due process in connection with the February 5, 2004 disciplinary hearing, this claim entitles him to no relief. *See Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court specifically rejected the contention that any action taken by correctional officials as a punitive measure encroaches upon a liberty interest protected under the Due Process Clause. *Id.* at 484. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," and a prisoner's assignment to segregation for a short period of time, "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon the inmate nor does it "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 485. Because the allegations about which Harris complains with regard to the disciplinary proceeding arising from the January 23, 2004 incident and the sanction imposed as a result thereof were "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life," he fails to assert a deprivation of any constitutionally protected liberty interest as he has no entitlement to due process in connection therewith. *Id.* at 484.

controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Harris merely asserts that the defendants based disciplinary action from the 23 January 2004 incident on false information. Under the circumstances, the defendants are entitled to summary judgment.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment on the claim of false disciplinary charge (Doc. No. 13) be GRANTED and this claim be DISMISSED with prejudice;

2. The defendants' motion for summary judgment on the excessive force claim (Doc. No. 13) be DENIED; and

3. The excessive force claim be set for an evidentiary hearing.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **June 16, 2006**. Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of June 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE